## Columbia Conduit Co. *versus* Commonwealth.

1. A corporation engaged in the removal of petroleum from place to place, by means of pipes, is a transportation company, within the meaning of the 4th section of the Act of April 24th 1874, and the 5th section of the Act of March 20th 1877, and is subject to the tax imposed by said acts.

2. The Act of 1874 requires transportation companies to pay annually a tax, "at the rate of nine-tenths of one mill upon its capital stock for each one per cent. of dividend made or declared by such company." *Held*, that the amount contributed by the stockholders to pay a loss incurred by the corporation cannot be deducted from the amount of this taxable dividend, as made or declared.

May 19th 1879. Before SHARSWOOD, C. J., MERCUR, GORDON and TRUNKEY, JJ. PAXSON, WOODWARD and STERRETT, JJ., absent.

Error to the Court of Common Pleas of *Dauphin county*: Of May Term 1879, No. 143 and 144.

These were two appeals by the Columbia Conduit Company of Pennsylvania from the decision of the Auditor-General and State Treasurer, made in the settlement of the accounts of said company with the Commonwealth. Said officers first assessed a tax on the capital stock of said company, for the year ending the first Monday of November 1876, under sect. 4 of the Act of April 24th 1874, Pamph. L. 70, which provides as follows:

"That every railroad company, canal company, steamboat company, slackwater navigation company, transportation company, street passenger railway company, and every other company now or hereafter incorporated, by or under any law of this Commonwealth, or now or hereafter incorporated by any other state, and doing business in this Commonwealth, and owning, operating or leasing to or from another corporation or company, any railroad, canal, slackwater navigation, or street passenger railway, or device for the transportation of freight or passengers, or in any way engaged in the transportation of freight or passengers, shall be subject to and pay a tax into the treasury of the Commonwealth, annually, at the rate of nine-tenths of one mill upon its capital stock for each one per cent. of dividend made or declared by such company, and in case of no dividend being made or declared by such company, upon either its common or preferred stock, then six mills upon a true valuation of the capital stock of the same, upon which no dividend has been made or declared, made in accordance with the provisions of the third section of this act."

Said officers also imposed a tax on the gross receipts of said company, from March 20th 1877 to June 30th 1877, under the provisions of the Act of March 20th 1877, Pamph. L. 5, the 5th section of which provides that the companies mentioned in the Act of April 24th 1874, sect. 4, "shall pay annually * * * a tax of eighth-tenths of one per centum upon the gross receipts."

[Columbia Conduit Co. *v.* Commonwealth.]

The Columbia Conduit Company is a corporation created by the Act of 25th April 1872, Pamph. L. 1872, p. 1150. Section third of that act thus enumerates the objects for which the company was formed and the powers it should possess :

" That the company shall have the right for themselves or as agents, upon commission or otherwise, to purchase, sell or otherwise dispose of oil and oil-lands, mine or bore for oil, and store, insure, ship and transport petroleum, and may construct and erect tanks of iron or other suitable material for the storage of oil, and to lay down, construct and connect iron or other pipes or tubing for that purpose, from any point or points within the county of Butler, to, at or near Sharpsburg, in the county of Allegheny, by such route or routes as may be for the best interests of the company ; and said company shall also have the right to take, use and occupy such lands as may be necessary for the purpose of erecting tanks to hold the oil or petroleum, and for the purpose of laying down the pipes or tubing for the conveyance of the oil from well, wells or reservoirs, and for all necessary branches, and for the erection of such machinery as may be requisite to carry on the transportation and storage business of the company."

The company laid down pipes, through which petroleum was conveyed from point to point.

The cases were tried by Pearson, P. J., without a jury, who delivered the following opinions therein :

" The facts established in the first of these cases, No. 230, November Term 1877, present two prominent points : First, is the defendant a company on which a tax is imposed by the 4th section of the Act of April 24th 1874 ? and, secondly, if taxable, at what amount should that tax be rated ?

" The statute, after enumerating various other companies, speaks of ' transportation companies,' ' and every other company now or hereafter incorporated by or under any law of this Commonwealth,' and after providing for other companies incorporated by other states, doing business here, goes on to say, ' or device for the transportation of freight or passengers, or in any way engaged in the transportation of freight or passsengers, shall be subject to and pay a tax into the treasury of the Commonwealth annually, at the rate of nine-tenths of one mill upon its capital stock for each one per cent. of dividend made or declared by such company.' It is conceded in the argument, that the principal, and, probably, all of the business of this company, is in flowing petroleum or oil from place to place, mentioned in the charter of incorporation, by means of pipes, through which the oil or petroleum flows, or is pumped, and is thus moved by flowing or pumping, according to the character of the grade from the oil wells to the place of manufacture, and, probably, the prepared oil from thence to the points on the railroad for shipment. It is contended that this moving of petroleum, by

[Columbia Conduit Co. *v.* Commonwealth.]

means of pipes, is not 'transporting,' and, therefore, that this is not a transportation company. The defendant's counsel contends, that to transport is 'to carry,' and that this transit company does not carry, but the petroleum flows—we consider this too narrow a construction. If we look into the dictionary for the meaning of the word 'transport,' Webster defines it, 'to carry or convey from one place to another,' again, 'to remove from one place to another,' and throughout all of the derivations from the word transport we find the same part of the definition 'to remove;' as transported is, inter alia, defined 'removed.' This petroleum is certainly removed. To look into the origin of the word, composed of *trans*, 'over,' 'from one place to another,' and *portus*, 'moving or carrying,' and *portatus*, 'bearing or bringing,' is going into too much refinement, but such was the character of the argument. We must construe words, not according to their original etymology, but by the common parlance of the country. In the present case, we have a much better guide—the words of the charter of incorporation, the third section of which authorizes the company to transport petroleum, and, for that purpose, to lay down pipes from the points named, and for the purpose of transportation of petroleum, oil, &c., may lay down pipes or tubing.

"Again, the fourth section gives like authority : to lay down pipes or tubing to supply the refinery with oil. Again, in the Act of March 12th 1872, P. L. 23, we find similar language used in regard to the transportation of petroleum in certain counties ; they are authorized to lay down pipes, tubing, &c., to transport petroleum. This being the general language used by the legislature in regard to the removal of petroleum from place to place, by means of pipes, why shall we not believe that the same was meant when the tax is laid on all transportation companies?

"Again, this 4th section of the Act of 1874, in speaking of the companies to be taxed, also says, after enumerating certain kinds of companies, 'or device for the transportation of freight or passengers, or in any way engaged in the transportation of freight or passengers.' Under this language we cannot doubt that this is a company engaged in the transportation of freight, within the Act of Assembly.

"The second is a question of greater difficulty. In assessing this tax on the capital stock, the state officers have no other data than the report made by the company officers, under oath, as required by law. The return shows very clearly that between the 15th day of February and the first Monday of November, the sum of $200,000 was received and divided among the stockholders, on a capital of $350,000. All of this was paid over, from month to month, during the year 1876, as made. The return shows, however, that during the year the corporation met with losses, which, although they did not reduce the dividends, had to be made up by

[Columbia Conduit Co. *v.* Commonwealth.]

the stockholders, who furnished petroleum from time to time, to cover the evaporation and supply the place of that which was burned, amounting in all to $89,429.58, the net profits of the year being only $110,570.42. Can the court allow a credit for that loss, or, under the words of the statute, must we tax the capital stock according to the 'dividends made or declared by the company?'

"If the tax was imposed on the net profits there would be no difficulty. The sum which the stockholders were obliged to pay would be deducted. The profit to them is lessened by that much. Such is not the form of the assessment or the words of the statute. It is not even a tax on dividend, but on the "*capital stock, measured by the amount of dividend* made or declared." The dividends in the present case were not only made and declared, but actually paid over to the stockholders. They preferred receiving their dividends, and making up the loss by evaporation or fire by delivering more petroleum, and if they chose to transact their business in that way it did not lesson the amount of dividends, yet it did of clear profit at the end of the year. The stockholders need not receive their dividends until the end of the year, and can then have the losses paid before the dividend is declared. That course was not pursued here; but, on the contrary, the dividends were all paid over, and the losses afterwards voluntarily made up by contribution of the stockholders. Sometimes dividends are so declared in order to ostensibly increase the value of the stock for the purpose of speculation by sales. Be the object what it may, the dividends in the case under consideration were actually made and declared, and fixes the tax on the capital stock. We therefore report against this corporation and in favor of the Commonwealth, as per report filed with this opinion."

The defendant took these writs and alleged that the court erred in the foregoing decisions.

*Eugene Snyder* and *Jeremiah S. Black*, for plaintiff in error.— This Conduit Company is a transportation company, within the meaning of the Act of Assembly. The company lost some oil by a fire, which the stockholders agreed to replace on condition that the company should pay them for it. This created a debt which was due to the stockholders, payable out of the company's capital, or any property it possessed. But the creditors gave time until the earnings were sufficient to pay the debt and make a dividend besides. Then the debt and dividend were paid together. These facts were not denied, but because the distribution was made in the *form* of a dividend, *substantial justice* was refused, and the company was taxed for its losses as well as its profits.

*Lyman D. Gilbert*, Deputy Attorney-General, and *Henry W.*

[Columbia Conduit Co. v. Commonwealth.]

*Palmer*, Attorney-General, for the Commonwealth.—This corporation from the language of its charter and the nature of its business, is subject to this tax. The legislature expressly declared that it taxed every corporation " owning, operating or leasing, any *device* for the transportation of freight or passengers." These words were intended to reach any other method than that in use by the corporations already specified in the section.

The charter of the company, already referred to, sustains this interpretation. Among the privileges given the company there is found the express one " to transport petroleum," and " to take, use and occupy such lands as may be necessary" " for the purpose of laying down pipes or tubing for the *conveyance of oil.*"

The tax is laid on the capital stock, and not on the dividend, and the measure of the tax is the dividend made or declared. The dividend is not the subject, but only the admeasurement of the tax, and it is sufficient if it be declared by the company without being actually earned: Commonwealth *v.* Cleveland P. & A. Railroad Co., 5 Casey 370; Lehigh Crane Iron Co. *v.* Commonwealth, 5 P. F. Smith 448; Phœnix Iron Co. *v,* Commonwealth, 9 Id. 104; Catawissa Railroad Co.'s Appeal, 28 Id. 59.

The judgment of the Supreme Court was entered June 2d 1879,
PER CURIAM.—We affirm these judgments upon the opinion of the learned president of the court below.

Judgment affirmed.